Ms. Canella is here for the appellate, Mr. Scribner for the appellee, and once you're all ready there, Ms. Canella, you can proceed. There's a few mistakes. Mm-hmm. Quiet. Okay. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Mm-hmm. Good morning. Good morning, everyone. May it please the court. My name is Teedra Canella, and I represent the appellant in this case, Jamie Andrews. This court should reverse the district court's decision for one of two reasons. First, because an actual manufacturer is liable for a product's defects, regardless of whether that manufacturer engaged in the design of that product. In this case, the judge, as I understand it, characterized the party as a seller and not as a manufacturer. Is that right? Your Honor, actually, the district court did not find that out of the law. I mean, the law is pretty clear. It talks about you're either one or the other. You're either a seller or a manufacturer. If you're a seller, you're exempt. Correct, Your Honor. That is the law. It could be both. Well, you can be both, but if you are both, then under the 51-1. You're a manufacturer. Dash 11.1, correct. You're not entitled to the protections of a product seller. So while the law does. . . Tell us this, because that's the whole question in this case, is whether or not this Japanese company was a manufacturer under Georgia law or was a seller under Georgia law. So tell us what evidence there is in this record or what evidence in this record creates a genuine issue of material fact as to that issue to show that Autoliv was, in fact, not just a product seller but a manufacturer. What evidence is in this record that shows us that? First of all, Your Honor, Autoliv's response to plaintiff's statement of additional facts states that it's undisputed that Autoliv manufactured every component in the seat belt. That's number one. Number two, Autoliv testified in its sworn deposition that Autoliv designed every component in this seat belt. That's number two. Number three, Autoliv made a representation on the specification that it designed, checked, and approved of the specification. As I understand that, and you correct me if I'm wrong, I know nothing about how you put together this seat belt assembly. But as I understand it, the Japanese company designed each component. Correct, Your Honor. That goes into it. But wasn't that—it had to meet the specifications, though, of Mazda. In other words, Mazda actually put together the whole unit. Is that right or wrong? Respectfully, Your Honor, no, that's not right. Mazda was very specific in its negotiations that it wanted Autoliv to create the drawings. So Mazda did not say, okay, here's the drawings. You've got some components. We want you to put them together like this plan we've created. Instead, it was Autoliv who designed the retractor, designed the torsion bar, designed everything in the assembly, and then created the drawings which it used to put together the seat belts. Is there something in the record? Did Autoliv admit that it's the manufacturer of the seat belt restraint system? Yes, Your Honor. Document 259-2 at 26. It's undisputed that Autoliv manufactured the components that comprise the seat belt assembly. Okay, I understand that. That's a fact in your favor. But then there's a case law out there that you're having a hard time getting around, and it's Davenport v. Cummins, and Autoliv says that case controls this case.  Thank you, Your Honor. Yes, the district court misconstrued Davenport and Autoliv misconstrues Davenport. The reason is because there are two ways to be liable under Georgia law. Either you're a manufacturer or you're so involved in the design of the defective product that you qualify as a manufacturer. Davenport dealt with that second line of cases, that qualify as line of cases. And what the district court did was it took the manufacturer requirement and superimposed on top of it another requirement that you also be involved in the design, and no court has ever done that in Georgia. What happened in Davenport, though? In Davenport, the defendant was a middleman. The company did not manufacture anything. It was a distributor? It was a distributor that did not manufacture the engine. So the product that was defective was a chipper. It was the final defective product was a chipper. The defendant, Alabama Cummins, had gotten the engine from another company and then acted as a middleman to sell it to the final producer of the chipper. That's totally distinct from what we have here, where Autoliv designed the defective component, manufactured it, and then when it sold it as new, it was already defective when it got to Mott's possession. So that's the big distinction in Davenport. Okay, you've got several arguments now, but your primary argument is that Autoliv, as the manufacturer, the way we interpret this statute, this Georgia statute, as long as you're a manufacturer, you're strictly liable? Yes, Your Honor. And you don't have to be involved in the design? That's correct, Your Honor. You're interpreting that statute differently? Yes, Your Honor, differently than Autoliv, but not differently than the case law. What's the best case that you have to support your view that Autoliv does not have to be involved in the design, only has to be a manufacturer in order to be strictly liable for damages caused by defects in the product? What's the best case that you have? There's so many, sir. If you don't have Davenport. There's so many, sir. So many before Davenport, though. How about after Davenport? After Davenport, Key Safety Systems v. Brunner is a great case for us. In that case, the defendant was a seatbelt manufacturer. As a matter of fact, she put a seatbelt in a Chrysler vehicle. And one of the defenses that the seatbelt manufacturer had was that Chrysler made the decisions. Chrysler decided what warnings would go into the case. It was a failure to warn case. And the court said, it doesn't matter to us if Chrysler would have told you not to put an appropriate warning on here. Your duty is determined by Georgia law, not by Chrysler's rules. And that's a very similar situation that we have here. There's also been a case that is directly on point out of the Colorado District Court recently, and that's Pertile v. General Motors. The citation is 2001 Westlaw 4237870. We're dealing with Georgia law. Yes, Your Honor. But the court there addressed the exact same argument that Autoliv has made in this case and said if you're designing to someone's specifications, that doesn't mean you're not liable for a design defect. Under Georgia law, the General Assembly decided if you manufacture a product and it's defective when it leaves your hands, you're responsible. And the General Assembly did put some limitations on that. So if the product was not defective until it was changed, or if it was not defective until it was integrated, then we're not going to hold you responsible for injuries. Or if you're a product seller. But those exceptions do not apply to Autoliv, and so the court is bound by the statute in this case. Even if there was a rule that required active involvement when there's an actual manufacturer, Autoliv has actively engaged in the design of this product, and plaintiff has presented enough evidence at the very least in that question to the jury. So the District Court read the evidence in the light most favorable to Autoliv and disregarded many categories of evidence. The way this process worked, according to Autoliv, was that Autoliv would present to Mazda certain samples of its products, products that Autoliv designed, products that are proprietary to Autoliv. And these designs all have Autoliv's confidential stamp on them, so these belong to Autoliv. And then Mazda would then pick and choose those products from Autoliv, and those were the things that went into the car. So these are all Autoliv products. If Autoliv doesn't produce or provide defective designs for Mazda to choose from, then a defective design doesn't make it into this Mazda 3. This seat belt effectively did not restrain Micah Andrews at all. It did not slow him down. It did not stop him from hitting structures inside the car. And the testimony is the thing that actually restrained him was the steering wheel. The testimony is that it was like he was not wearing a seat belt at all, and it was in that condition when it left Autoliv's possession. Thank you. Thank you, Ms. Cannella. You've reserved some time for rebuttal. We'll hear from Mr. Scribner. Good morning. Good morning. Doug Scribner on behalf of Autoliv. You're going to tell me that these people are sellers and not manufacturers, right? I'm actually not going to say that. The definition of manufacturer, which is at issue in this case, Judge Gilbert, depends on the claim that is being asserted. The claim asserted in this case is a design claim. That is why Davenport, which follows Banks, Banks is the ultimate product liability decision in the history of products law in Georgia, is a logical extension of Banks when they say to be responsible for a defective design claim, which is what we have. A manufacturer is defined as someone who is actively involved in the design. They're claiming that Autoliv is strictly liable because it's a manufacturer, and when you look at the Georgia statute, it states the manufacturer of any personal property sold as new directly or through a dealer or any other person shall be liable in tort, period. That's correct. So they're claiming they're strictly liable as a manufacturer. That's correct. They're not even claiming that. They have to be involved. Autoliv has to be involved in the design. But even if they are, they were involved in the design. So that first part, I don't see how you get around it, that statute. Yes, sir. The plain language of that statute, I don't see how you get around it. They are 100% wrong. This statute was enacted in 1968, over 50 years ago. We all know that when Banks came along, it changed the world. Prior to Banks, no one cared whether you had a manufacturing defect or a design defect claim because you were strictly liable, to use your words, Judge Wilson, if your product caused a problem. Banks comes along and says, not so fast in design claims. We're going to look at two things in design claims. We're going to look at your choice, and we're going to look at the reasonableness of your choice. Well, Georgia needs to amend the statute then if they don't want to make manufacturers strictly liable. The cases are very clear that post-Banks for design claims, it is the choice that you make for the design. But they're not making a design claim. They're claiming that they're strictly liable as the manufacturer. No, I would disagree with that, Your Honor. They do say that we're strictly liable, but it is a design claim. Let me get into the weeds a little bit. The design at issue here is whether this particular seat belt assembly and the torsion bar had had too low a deployment threshold. That is the plaintiff's argument. The torsion bar was selected by Mazda, correctly? Correct. They looked at several options, and they chose whatever it was. Correct. That is the ultimate issue in the case, who made the decision. And respectfully, Judge Wilson, I believe that the Banks case says, who makes that choice? We're going to hold you responsible if you make that choice. Davenport comes along and says, well, if you are a supplier, if you are a manufacturer, if you are a consultant, I'm going to hold you responsible if you're actively involved in that decision. I submit to this court, you could never have better facts for a supplier than we have here because, Judge Goldberg, you hit the nail on the head. They asked us to supply them all sorts of torsion bar deployment thresholds. We gave them low. We gave them high. They go back and they test the vehicle, and it's very complex testing where you take it, put it in the vehicle, run it into the wall, and see how it performs. They came back after they did their testing and they said, this is the deployment threshold that we want. You couldn't have more clear evidence that the design decision was made by Mazda. Did we make parts that were component parts that comprise this system? Yes. No doubt about it. The specification, I respectfully but completely disagree with what opposing counsel said about the specification. This specification was a Mazda specification. The evidence in the record is crystal clear that it was a Mazda specification. They gave us the specification and they said, you follow this because it's important. This is our design. This is our vehicle. You either follow this or you're fired. They were aware of the results of the simulated crash test? Autoliv was aware of that, that the seatbelt doesn't work? Like for other cars in its class? I'm not sure, Judge Wilson, if you're talking about the final NCAP results or whether you're talking about the computer simulation. I would point out with respect to computer simulation, the MADI mode testing takes place during product development. This is 10 months before they actually make the vehicle. But Autoliv knew that there were problems with the seatbelt before it sold the seatbelt to Mazda? Disagree completely. There's no evidence in the record of that, that Autoliv had access to the simulated crash tests using dummies? The simulated crash tests are MADI mode tests, which is essentially what they're being asked to do is correlate the data to make sure that the predictive testing that goes on in the MADI mode is accurate. But the proof is in the pudding. Federal law, Judge Wilson, requires you to not look at computer results. What happens is you take the actual product, slam it into a wall, and look at the results. In the 10-month period when Mazda is making design changes to make it a better and safer vehicle, Autoliv has no clue what they're doing. It's their vehicle. The ultimate test that was performed, Your Honor, while the expert looks at it and says, I'm going to take issue with it, it satisfies the federal regulations, and Mazda gets a 4 out of 5 star rating on the NCAT. The ultimate test at the end, which is the one that matters, showed that this product was safe. Now plaintiff is appropriate and right to say… It was safe. It had the weakest torsion bar in its class of 2005 compact passenger cars. Significantly less spool-out than the others. What was the spool-out of 20 inches in a 35-mile-per-hour crash? No other car in its class had that much spool-out. That is what the plaintiff's expert opines. All right. For sure. Which the district court is to take into consideration in deciding summary judgment and look at the evidence in the light most favorable to Andrews, right? But the original question, Judge Wilson, was what did we know during product development? What we knew is that ultimately Mazda has its design and they have to satisfy the federal regulations, and they did. Plaintiff takes issue with the regulation, but they did. Autoliv even admits that it manufactured the entire seat belt assembly restraint system. I would say the response to that, Your Honor, is that we either made the component parts or we purchased them. Yes, we certainly had involvement in putting the parts together. Is it also undisputed in the record that there is a safe alternative design that Autoliv was aware of when it sold the seat belt restraint system to Mazda? Absolutely not, because we don't make the design. We aren't the designer. And so to suggest that, I guess, maybe put this in context. The number of component parts in an automobile, all of our automobiles, that can impact occupant safety is mind-blowing. Thousands. To isolate one part and say that's the culprit, well, that's Monday morning quarterbacking. The only way you determine whether the product is safe or not is to put it in the vehicle, that includes the seat, includes the driver's airbag, all of these parts, and go through the federal testing. Now, during product development, Mazda is doing that. Autoliv answers questions. Autoliv responds if there are questions. I submit to you, Your Honor, when you look at Davenport, let's look at what in Davenport happened. In Davenport, the engine supplier goes out to the facility and tells the chipper this engine is compatible, number one. Number two says this engine needs to be moved so it's closer to the hydraulic pumps. Ultimately, the plaintiff says it's too close and the proximity actually causes the fire. Against that backdrop, the Court of Appeals said that's not active involvement. That's not active involvement in the design. The designer here was the wood chipper. I submit to this Court that the involvement that Autoliv had, when you compare it with the involvement in Davenport, isn't even really a close call. In Davenport, the plaintiff in that case did not argue that the component part that went into the final product was defective, but rather that the distributor of the component part was involved in the design of the defective final product. Am I reading that wrong? Let me touch on the distributor point. It's an important point, and I'm glad you raised it, Judge Wilson. The manufacturer of the engine is a company called Cummins Engine Company. The distributor is Cummins Alabama Inc. It's an affiliate. What happened in this case is that the distributor is the one that goes out and makes these recommendations and says, move the hydraulic pumps over toward the engine, all at the behest of the manufacturer. In fact, the most important quote in the case to me is that Cummins Engine, that's the manufacturer, required Cummins Alabama to conduct engine installation review. The plaintiffs would have this Court believe that Judge Ellington writes this decision, this very substantive decision, knowing full well who the manufacturer is and who the distributor is. Well, this judge who wrote this decision was very careful to distinguish what the case did not hold in footnote 5. I agree with that. I agree with that. It limited its decision, which is why I'm not sure that Davenport controls this case. Well, we think it does, Your Honor. Let me put it this way. After Davenport, you have Carolina Tobacco. You have Bailey v. Cottrell. Both of these cases cite approvingly to Davenport and say that the test is active involvement in the design. I submit to you that whether you are a manufacturer of a component part, a supplier, a consultant, the rule for design claims is that you can be held responsible if you're actively involved in the design, and it stems from banks. The most important case in the history of Georgia products liability law. I'll say this, too, because in the Bailey case, let's think about this for a second. In the Bailey case, the defective design at issue in that case was a car hauler. It is undisputed that the defendant was both the manufacturer and the designer. That entire case was choice of law on the design claim. Should it be Indiana law? Should it be Georgia law? And the court goes through an analysis that's unbelievable. Judge Adams, it's a 10-page opinion. And again, we're to believe that they do this analysis as an exercise in futility because according to the plaintiffs, it doesn't matter what design law applies. They're on the hook because they're the manufacturer. That car hauler is on the hook. I submit that there is no way to read Davenport and Bailey and say that these courts are writing these decisions when in reality all you have to do is get the manufacturer and they're on the hook. It's wrong also as a matter of policy post-Banks. I encourage you very much to go back to the Banks decision because Banks was a sea change in the law. No longer are you strictly liable for simply supplying a product that fails. It is the design decision. What did you choose? They used the word choice or a derivative of the word choice. Choose, choosing six times. The law post-Banks, respectfully, is you are on the hook if you do not make a reasonable design choice. And here, that design choice, Judge Goldberg, 100% was made by Mazda. You couldn't have more of a crystal clear record on that. Let me ask you this question. Assuming you're correct that your client was not liable as a manufacturer of this seat belt assembly under Georgia law, does the negligence count in this case? Why wouldn't the negligence survive summary judgment? That's a great question. Post-Banks, negligence claims in the design context and strict liability claims, hearkening back to Judge Wilson, what you said, are one and the same. The Ogletree decision post-Banks says... I didn't say that. No, no, no, I'm sorry. I attributed something to you that I didn't... I'm hearkening back to your point about it's strictly liable when you're a manufacturer. I apologize. Post-Banks, Ogletree, all of the decisions say, look, banks change the world, folks. In design claims, your negligence claim and your strict liability claim merge into one, and we're going to evaluate the same thing. You can call it one, you can call it the other. But in fact, to be fair to the plaintiffs here, there are cases that still refer to it as strict liability. But the test is the same it set forth in footnote 5 of the seminal decision in Banks in 1994. Were you reasonable in your choice? Were you reasonable in that design? And so it's a distinction, Judge Dubino, that here is irrelevant because they're evaluated the same way. Post-Banks, which changed the world, says we're going to evaluate the design. Did Boyce v. Gregory come after Banks? There, you've stumped me, Your Honor. I'm not sure. Strict product liability to the manufacturer or designer. It seems to read the statute the way I'm reading it in the disjunctive. Well, I would say this. When you get to trial and they evaluate your design claim, you are going to get the bank's charge. Was your design reasonable? It's not a strict liability claim insofar as you're not on the hook simply by virtue of having either manufactured it or designed it. And so I've never seen a case, and there is no reported case, where design is evaluated anything other than Banks. I'll say this. You asked, Judge Wilson, is there a case out there? We have been able to find a single case where a manufacturer, a supplier, is on the hook for a design claim without active involvement in the design. And I would respectfully close with this. If you have any hesitation about this issue, we ask that you certify it to the Supreme Court of Georgia. Thank you. Let me ask you one last question. Yes, sir. Nobody asked for this, and we're not required to do this, but Davenport is an intermediate appellate court case out of Georgia, which is binding on us. We have case law that says the highest state court to decide a question of state law is binding on us. Is this a case we ought to consider maybe certifying to the Georgia Supreme Court? Yes. There's no Georgia Supreme Court case that's ever really interpreted this statute or these statutes. And I just wonder, even though we don't like to overwork our friends on that court, whether this is a case that maybe cries out for certification. I would absolutely encourage that. And the reason why is it harkens back to what Judge Wilson said, which is, well, I read the statute and the plain meaning of the statute. It seems to say something, but Banks and Davenport are saying something. It's an extension of it. And so I do think that if this court on the law If we certified it, what question or questions should we certify? It is in our footnote 107 to our brief. All right. I can't recite it. I'm sorry, but it's in footnote 107. It essentially says whether a component, supplier, manufacturer can be held liable for a design claim regardless of whether they participate in the design. All right. Thank you. Thank you. What's your position on certification? Your Honor, our position on certification is that it would be a complete waste of time for the Georgia Supreme Court and that this question is answered directly by the statute and the cases in front of the court today. So you think just looking at the language of the statute itself there's enough to get you to a jury? Yes. That's number one. And number two is if you look at the question that Ottoliffe has articulated in footnote 107, that reveals how useless certification would be in this case. Because Ottoliffe's question says, can a component part supplier who supplies a part that conforms to the specifications of the designer and manufacturer of the finished product and who is, this is the important part, not otherwise actively involved in the design specifications or formulation of a dot, dot, dot, defective component part. That is not the case here. Ottoliffe is involved in the design. All these designs in the seatbelt are proprietary to Ottoliffe. Their engineers came up with them. And what's the best evidence in the record that Ottoliffe was involved in the design of the seatbelt assembly restraint system? The best evidence in the record that was ignored by the district court? That is Ottoliffe's statement. Let me look for the... I apologize, Your Honor. Ottoliffe's 30B6 engineer testified that Ottoliffe designed all the components in the seatbelt assembly. That is... Is that in a deposition? Yes, Your Honor. That's in Mr. Printowski's deposition. Here it is, doc 237 at 61. It's Printowski's deposition at page 60. We, quote, we designed the components in the seatbelt to agree with the specifications by Mazda. So certifying... Is there anything else? Yes, Your Honor. All the components that Ottoliffe presented to Mazda were already designed and created by Ottoliffe. That's what the whole evidence in the case is. They said here's our retractor, here's our torsion bar, here's our seatbelt webbing. Which product would you like to buy? And their defense in the case is Mazda chose the defective one. That's not a defense. Georgia law puts a duty on a manufacturer to manufacture non-defective products. There's a case that's very helpful, which is Chicago Hardware. And that case deals with a component manufacturer. It's a tree stand. The tree stand manufacturer... Is that a Georgia case? Yes, sir. It's a Georgia Court of Appeals case. 510 Southeast 2nd 875. And it says it's after Banks. So this whole idea that Banks changed who can be liable is simply not reflected in the cases. Banks set the standard for what defect means. It didn't say anything about who could be liable for the defect. Chicago Hardware, which came after Banks, dealt with a defendant who's the tree stand manufacturer and a defendant who was the turnbuckle component manufacturer, which held the tree stand to the tree. And the court said to show that component manufacturer's liable, you have to prove three things. Number one, that the component manufacturer is the, quote, manufacturer of the property. In other words, the turnbuckle. Number two, that the turnbuckle was defective when it was sold. And number three, that the turnbuckle's defect was the proximate cause of the plaintiff's injury, which the plaintiff has done in this case. The turnbuckle that the tree stand manufacturer ordered complied with whatever the tree stand manufacturer requested. But that wasn't a defense in the Chicago Hardware case. And the same situation applies here. It's not a defense to say, Johnny told me to jump off the bridge, so I jumped off the bridge. The defense of Mazda told us to make this defective product or to provide this defective product is not a defense either for Autoliv. And again, the court addressed a similar kind of argument in Key Safety Systems v. Bruner, where it said, just because Chrysler wasn't going to let you warn the way the plaintiff says you should have warned, that's not going to get you off the hook. We're going to hold you to a standard, even though you're a component manufacturer, of providing a non-defective product. So these are issues that are already addressed in the case law, and there's no reason to certify this particular case to the Georgia Supreme Court. The second thing I wanted to say goes to a point that Judge Goldberg made earlier, which is that there are really two categories under Georgia law. There's manufacturers and there's product sellers. You have to be one or the other. Autoliv's trying to create this third category of, yes, we manufactured but we didn't design, and that's not in the statute, but that's enough to get us out of trouble here. And that's simply not in any of the cases. So are the Georgia courts now, the Georgia Intermediate Courts of Appeals, interpreting this statute differently than you're interpreting the statute? No, Your Honor. Our interpretation is totally consistent with what the Georgia Courts of Appeals have said. They have said you're liable, strictly liable under the statute, if you either designed or, well, let me get the exact language for you, Your Honor. Production, design, or assembly, either one of those three is disjunctive. You just read from the statute? I'm sorry, no, Your Honor. That's from Alltrade and Buchan. There's two other cases that address this disjunctive issue, and they say actual manufacturer or designer. That's Morgan v. Marbell in the Northern District of Georgia and Boyce, which is a Georgia Court of Appeals case. All right. I think we have your arguments. Thank you, counsel. Thank you, Your Honor. Court is adjourned.